IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JERRY MARTIN                                                                PLAINTIFF

VS.                              CASE NO. 4:06-CV-4059

PHILLIP RUSSELL, Individually and
in his Official capacity as City of Hope
Police Department Officer, KIM TOMLIN,
Individually and in her official Capacity as
City of Hope Police Department Officer,
TATE BOOKER, Individually and in his
official Capacity as City of Hope Police
Department Officer, SANDRA SUNBURG,
Individually and in her official Capacity as
City of Hope Police Department Officer,
PETE ANZLONE, Individually and in his
official Capacity as City of Hope Police
Department Officer, and The CITY OF HOPE,
ARKANSAS                                                                 DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Jerry Martin brings this lawsuit against Defendants Phillip Russell, Kim Tomlin,

Tate Booker, Sandra Sunburg, Pete Anzlone and the City of Hope, Arkansas (collectively,

"Defendants") pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional

rights under color of law.  Now before the Court is Defendants' Motion for Summary Judgment.

(Doc. 17).  Plaintiff Jerry Martin has responded in opposition.  (Doc. 24).  Defendants filed a reply

to Plaintiff's response.  (Doc. 31).  The matter is ripe for consideration.

### I. FACTUAL BACKGROUND

The events giving rise to Plaintiff's Complaint occurred during the three-year pendency of

a divorce between Plaintiff Jerry Martin and Leeanna Martin.  As part of the divorce proceedings,

Plaintiff Jerry Martin obtained custody of the couple's two children.  At her deposition for this

matter, Leeanna Martin testified that she "felt like [she] was being treated unfair" by "the court system," (Doc. 24-12, pg. 2) so she sought aide from a number of Hope police officers.  Leeanna Martin's father had been a police officer in Hope, and Leeanna herself had always been acquaintances with a number of officers there. (Doc. 24-7, pg. 2).  A number of Hope police officers were sympathetic: at one point, Defendant Officer Kim Tomlin told Leeanna Martin that she would "do anything to help [Leeanna] get [her] kids back." (Doc. 24-7, pg. 1).  Asked why Officer Tomlin felt this way, Leeanna testified at her deposition that Officer Tomlin "though Mr. Martin was in the wrong." (Doc. 24-7, pg. 1).  With regard to Defendant Officer Sandra Sunburg, Leeanna testified at her deposition that "she told me she would help me–the way she could help me get the boys back is that the more times that Mr. Martin went to jail, the better off I was into receiving custody of my children." (Doc. 24-12, pg. 2).  At her deposition, Leeanna Martin admitted to having called the police to arrest Jerry Martin more than 20 times.  (Doc. 24-17, pg. 1).

It appears that the first incident about which Plaintiff complains occurred on December 17, 2003.  That day, Hope Police Officer Donald Blair[1] handcuffed Jerry Martin and placed him in the back seat of a patrol car.  Martin was then delivered to the Sheriff's Department where he sat in the booking room for a period of time until he was advised by the Chief of Police of the City of Hope, Arkansas, that he was there on his "own free will" and not under arrest. (Doc. 18, pg. 7).

The next incident about which Plaintiff complains occurred on December 22, 2003, when Officer Darryl Howard[2] and Officer Phillip Russell stationed themselves outside Plaintiff Jerry

---

[1] Officer Blair was dismissed as a Defendant from this suit by Order dated March 8, 2007.  (*See* Doc. 7).

[2] Officer Howard was dismissed as a Defendant from this suit by Order dated March 8, 2007.  (*See* Doc. 7).

2

Martin's place of business in Hope for a period of approximately two and a half hours. (Doc. 17-10, pg. 6). During the time Officers Howard and Russell stood by, Leeanna Martin removed a number of pieces of the couple's marital property from the business. Plaintiff alleges that this incident cost him business from his retail store, and allowed Leeanna Martin to remove items subject to division upon divorce.

Another incident occurred on January 16, 2004, when Defendant Officer Sandra Sunburg and Defendant Officer Phillip Russell issued a citation for criminal mischief to the Plaintiff's mother. The officers had been at Plaintiff's place of business in Hope, inquiring of Plaintiff his reasons for removing signage. Plaintiff alleges that while issuing the citation, Defendant Russell advised Plaintiff's mother that he was sorry he had to issue her the citation. Plaintiff alleges that Officer Russell told him and his mother that he was under orders to issue the citation from his "higher ups." (Doc. 1, pg. 3).

A further incident about which Plaintiff complains occurred on January 19, 2004, when Officers threatened him with arrest and indicated that he was not allowed to drive up to his place of business. When Plaintiff arrived at his place of business, Leeanna Martin walked out and left with Defendants Kim Tomlin and Pete Anzlone. (Doc. 1, pg. 3).

Later that year, on August 8, 2004, Officer Howard issued several traffic citations to Plaintiff. Plaintiff received further traffic citations from Officer Howard on August 20, 2004–this time for failing to stop at a stop sign. (Doc. 1, pg. 4).

A final series of events began on March 3, 2005, when Plaintiff was arrested and subsequently released by Defendant Tate Booker for an alleged violation of an Order of Protection. At various times during the divorce proceeding, both Plaintiff and Leeanna Martin had obtained

Orders of Protection.  These orders purported to empower the Hope police to arrest the respondent spouse for violations of the terms of the order.  Each order was dismissed at some point during the divorce proceedings.  However, Plaintiff was again arrested on March 12, 2005, this time by Officer Sandra Sunburg.  Again, the basis for the March 12, 2005 arrest was an alleged violation of an Order of Protection.

On July 24, 2006, after the divorce was final, Plaintiff filed his Complaint in this matter, bringing various causes of action for deprivations of his Constitutional rights against Hope police officers Donald Blair, Darryl Howard, Phillip Russell, Kim Tomlin, Tate Booker, Sandra Sunburg, Pete Anzlone and against the City of Hope, Arkansas.  (Doc. 1).  Plaintiff set forth claims against the officers both in their individual and their official capacities.  By Order dated March 8, 2007, the Court dismissed Plaintiff's claims against Officers Donald Blair and Darryl Howard.  (Doc. 7).  The matter is now before the Court on Defendants' Motion for Summary Judgment.

## II. SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial−whether, in other words, there are genuine factual issues that properly can

4

be resolved only by a finder of fact because they may reasonably be resolved in favor
of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also
Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v.
Paper Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is
material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*
477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to
return a verdict for either party. *Id.* at 252.

The movant's burden has two distinct components: an initial burden of production, which
shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion,
which always remains on the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct.
2548; 91 L.Ed.2d 265 (1986). The Court need not decide whether the moving party has satisfied its
ultimate burden of persuasion unless and until the Court finds that the moving party has discharged
its initial burden of production. *Celotex Corp.*, 477 U.S. at 330-331 (citing *Adickes v. S.H. Kress &
Co.,* 398 U.S. 144, 157-161, 90 S.Ct. 1598, 1608-10, 26 L.Ed.2d 142 (1970)). The Court must view
the evidence and the inferences that may be reasonably drawn from the evidence in the light most
favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  The nonmoving party must then demonstrate the
existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of
LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may
not rest upon mere allegations or denials, but must set forth specific facts showing that there is a
genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

III. DISCUSSION

At the heart of Plaintiff's Complaint is the allegation that he was arrested–unlawfully–on several occasions for purported violations of an Order of Protection.  On July 28, 2003, Judge Jim Gunter entered a Permanent Order of Protection, which, in part, excluded Plaintiff Jerry Martin "from the place of business, employment, school or other location of the _____ or victim." (Doc. 17-13, pgs. 1-3).  The Order of Protection provides that "pursuant to Act 266 of 1991, any law enforcement officer within his/her jurisdiction to whom this Order is presented *shall enforce the terms herein forthwith*." (Doc. 17-13, pg. 3)(emphasis added).   For Defendant, this Order conclusively establishes the legality of Jerry Martin's multiple arrests.  The Court disagrees.  The summary judgment record reveals genuinely-disputed issues of material fact with regard to the legality of a number of arrests to which Plaintiff was subjected.

Speaking of Defendant Officer Sandra Sunburg, Leeanna Martin testified at her deposition that "she knew there wasn't a protection order after that point. ... After – the protection order was dropped. ... She knew there was no protection order." (Doc. 24-5, pgs. 1-2).  Asked how Officer Sunburg and her fellow officers would know that the Order of Protection had been dropped, Leeanna Martin testified "[b]ecause they couldn't find it in the police department. Whatever files they had. ... Any of them couldn't find it." (Doc. 24-5, pg. 2).  Leeanna Martin further testified: "After the Orders of Protection were dropped, [the officers] could not find – when I would call them, they would not find their Order of Protection in the system is what they would say. But they would all – and *nine times out of ten they would arrest him and take him to jail*." (Doc. 24-5, pg. 3)(emphasis added).  Leeanna Martin further clarified the process that occurred on multiple occasions: "the police department would be called to an incident [between Plaintiff and Leeanna Martin] that was

6

happening and they would call on the radio to the dispatcher, they couldn't find a protection order." (Doc. 24-6, pg. 2). Leeanna Martin also testified that "I knew there was no protection order." (Doc. 24-13, pg. 1)(*see also* Doc. 24-14, pg. 1, Doc. 24-15, pg. 1). At some point, Plaintiff Jerry Martin obtained his own protective order against Leeanna Martin. (Doc. 24-16, pg. 1). During a hearing in front of Judge Culpepper regarding their divorce, Plaintiff and Leeanna Martin agreed to drop their Orders of Protection. (Doc. 24-16, pg. 2). Contrary to Defendants' repeated assertions otherwise in their pleadings, Leeanna Martin testified that there was a written order dismissing the Order(s) of Protection. (Doc. 24-18, pg. 1). Leeanna Martin further testified that "I know [the protective orders] were dismissed. I mean, I went to court, I stood in front of the Judge, and I agreed to dismiss the order." (Doc. 24-19, pg. 1). Perhaps most revealing, at times Leeanna Martin struggled to recall which officer or officers were involved in each specific incident, often repeating "[t]here were so many officers involved." (Doc. 24-4, pg. 1)

Upon review of the summary judgment record, and viewing the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the Plaintiff, as the Court must at this stage of the proceedings, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, genuine issues of material fact are present with regard to the legality of Jerry Martin's arrests and the officers' investigations related thereto. To the extent that Plaintiff sues Defendants for unlawful arrests and for failure to conduct proper investigation related to those arrests, Defendants' summary judgment motion will be denied.

Plaintiff also sets forth claims based on a number of other incidents. For the sake of convenience, the Court will summarily address the remainder of Plaintiff's claims. First, Plaintiff appears to set forth a claim based on the December 22, 2003 incident, in which Officers Howard and

Russell stood by while Leeanna Martin removed items of marital property from Plaintiff's business. Plaintiff admits that no court order existed which would have required the officers to prevent this activity. Further, "when a police officer is involved in a private party's repossession of property, there is no state action if the officer *merely keeps the peace*, but there is state action if the officer affirmatively intervenes to aid the repossessor enough that the repossession would not have occurred without the officer's help." *Moore v. Carpenter*, 404 F.3d 1043, 1046 (8th Cir. 2005)(emphasis added). The undisputed facts reveal that the officers merely kept the peace during this incident. Accordingly, summary judgment is appropriate for Defendants with regard to this claim.

Next, Plaintiff sets forth a claim based upon the January 16, 2004 citation of his mother for criminal mischief by Officers Sunburg and Russell. Plaintiff is without standing to assert the purported constitutional violations of his mother. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement," the Supreme Court still "held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Eighth Circuit has subsequently recognized that alleged deprivations of a constitutional right of a third party does not provide standing for a plaintiff to assert the third party's alleged constitutional violations. *Miner v. Brackney*, 719 F.2d 954, 956 (8th Cir. 1983), *cert. denied* 467 U.S. 1259 (1984). As a result, Plaintiff's claim based upon the citation of his mother fails to survive Defendants' summary judgment motion.

Plaintiff also sets forth a claim against Defendants based upon alleged threats of arrest, arising from a January 19, 2004 incident. (Doc. 1, pg. 3). The general rule is that "mere verbal

threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). To determine if a constitutional violation has occurred, courts examine "such factors as 'the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Hopson*, 961 F.2d at 1378. The Court is satisfied that summary judgment in favor of Defendants is appropriate with regard to Plaintiff's claims related to alleged threats of arrest. Any remaining claims advanced by Plaintiff not heretofore addressed–whether sounding in the prohibition of cruel and unusual punishment or the right to freedom of speech–are not properly plead, and are unable to withstand Defendants' summary judgment motion.

## IV. QUALIFIED IMMUNITY

In their Motion for Summary Judgment, Defendants assert that they are entitled to qualified immunity. As Defendants correctly note, "to withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of material fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right." *Habiger v. Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

Upon review, the Court is satisfied that Defendants are not entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed. 396 (1982)(providing that "qualified immunity would be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury'")(emphasis in original). Plaintiff has set forth claims and

9

produced summary judgment evidence tending to show that he was arrested on a number of occasions for purported violations of an Order of Protection which the arresting officers knew to be dismissed or invalid.  Plaintiff has also set forth claims and produced summary judgment evidence that the officers failed to conduct proper investigations related to these arrests, or ignored the results of their investigations.  Viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the Plaintiff, as the Court must at this stage, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, the Court cannot conclude that the Defendants' conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. at 818 (*citing Procunier v. Navarette*, 434 U.S. 555, 565, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978)); *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)(providing that the "'salient question ... is whether the state of the law' gave the officials 'fair warning that their alleged [conduct] was unconstitutional'"); *Shockency v. Ramsey County*, 493 F.3d 941, 947 (8th Cir. 2007); *Brockinton v. City of Sherwood, Arkansas*, 503 F.3d 667, 671-72 (8th Cir. 2007).  Accordingly, Defendants are not entitled to qualified immunity.

IV. CONCLUSION

For reasons stated herein and above, the Court is satisfied that genuine issues of material fact exist with regard to the alleged unlawful arrests of Plaintiff Jerry Martin for alleged violations of protective orders and with regard to Defendants' investigations related to those arrests, rendering summary judgment inappropriate.  Accordingly, Defendants' Motion for Summary Judgment should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' motion is **DENIED** to the extent that it seeks dismissal of Plaintiff's claims of unlawful arrest and failure to investigate.

10

Defendants' motion is **GRANTED** to the extent that it seeks dismissal of all other claims advanced by Plaintiff.  Aside from Plaintiff's claims arising from alleged unlawful arrests and failure to investigate, Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

Finally, the Court is satisfied that Defendants are not entitled to qualified immunity. Plaintiff's claims related to his unlawful arrest for alleged violations of protective orders and to Defendants' failure to investigate proceed to trial by jury.  An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 14th day of July, 2008.

            /s/Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

11